UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COREY WAYNE ZIMMERMAN, <br><br> Plaintiff, <br><br> v. <br><br> ANDREW SAUL, <br><br> Defendant. | Case No.: 19cv1318-LL <br><br> **AMENDED ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT** <br><br> **[ECF Nos. 21, 22]** |

Plaintiff Corey Wayne Zimmerman brings this action for judicial review of the Social Security Commissioner's ("Commissioner's") denial of his claim for disability insurance benefits and supplemental security income. ECF No. 1. Before the Court are Plaintiff's Motion for Summary Judgment [ECF No. 21 ("Pl.'s Mot.")], Defendant's Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion [ECF No. 22 ("Def.'s Mot.")], and Plaintiff's Reply in Support of Motion for Summary Judgment [ECF No. 23 ("Pl.'s Reply")].

For the reasons set forth below, the Court **GRANTS** Plaintiff's Motion for Summary Judgment and **DENIES** Defendant's Cross-Motion for Summary Judgment.

///

///

## PROCEDURAL BACKGROUND

On May 9, 2016, Plaintiff filed an application for disability insurance benefits pursuant to Title II and Title XVIII, Part A of the Social Security Act, and supplemental security income pursuant to Title XVI. Administrative Record ("AR") at 204-216. In both applications, Plaintiff alleged disability beginning November 2, 2014. Id. at 204, 209.

On August 8, 2016, Plaintiff's claims were denied by initial determination. Id. at 137-141. On September 1, 2016, Plaintiff requested reconsideration. Id. at 142. On October 19, 2016, Plaintiff's application was denied on reconsideration. Id. at 143-47. On November 16, 2016, Plaintiff filed a written request for a hearing. Id. at 150-51.

On June 19, 2018, a hearing was held before Administrative Law Judge ("ALJ") Robert Iafe. Id. at 39-82. On October 2, 2018, the ALJ issued a written decision in which he determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from November 2, 2014 through the date of the ALJ's decision. Id. at 15-24.

Plaintiff requested that the Appeals Council review the ALJ's decision. Id. at 1. In a letter dated May 20, 2019, the Appeals Council found no basis for changing the ALJ's ruling. Id. at 1-3. The ALJ's decision thereafter became the Commissioner's final decision.

On July 16, 2019, Plaintiff filed the instant action for judicial review by the federal district court. ECF No. 1. On December 6, 2019, Plaintiff filed a motion for summary judgment. ECF No. 21. On January 20, 2020, Defendant filed a cross-motion for summary judgment. ECF No. 22. On January 29, 2020, Plaintiff filed a reply. ECF No. 23. Defendant did not file a reply. See Docket.

## SUMMARY OF THE ALJ'S FINDINGS

The ALJ followed the Commissioner's five-step sequential evaluation process in his written decision. See 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 2, 2014, the alleged onset date. AR at 17.

At step two, the ALJ found that Plaintiff had the following severe impairments: "degenerative disc disease of the cervical spine and lumbosacral spine; and obesity." Id. at

18. In contrast, the ALJ found Plaintiff's medically determinable impairments of hypothyroidism and a knee condition "singly and in combination" did not pose more than a "minimal limitation in [Plaintiff]'s ability to perform basic work activities" and were therefore non-severe. Id. The ALJ further found that Plaintiff's alleged depression was a non-medically determinable impairment. Id.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in the Commissioner's Listing of Impairments. Id.

In his RFC assessment, the ALJ found Plaintiff did have residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). Id. Specifically, the ALJ found that:

> [Plaintiff] can lift and carry 15 pounds occasionally and 10 pounds frequently; and can stand and/or walk for 4 hours out of an 8 hour workday; can sit for 6 hours out of an 8 hour workday; can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; can never climb ladders, ropes, and scaffolds; and must avoid workplace hazards such as unprotected heights and dangerous machinery.

Id.

At step four, the ALJ found Plaintiff was not capable of performing any past relevant work. Id. at 22.

At step five, the ALJ found Plaintiff retained residual functional capacity to make a "successful adjustment to other work that exists in significant numbers in the national economy." Id. at 23.

## STANDARD OF REVIEW

Section 405(g) of the Social Security Act permits unsuccessful applicants to seek judicial review of the Commissioner's final decision. 42 U.S.C. § 405(g). The scope of judicial review is limited. A denial of benefits will not be disturbed if it is supported by substantial evidence and contains no legal error. Id.; see also Trevizo v. Berryhill, 871 F.3d

3

664, 674 (9th Cir. 2017) (citing Benton ex rel. Benton v. Barnhart, 331 F.3d 1030, 1035 (9th Cir. 2003)).

"Substantial evidence is more than a mere scintilla, but may be less than a preponderance." Lewis v. Apfel, 236 F.3d 503, 509 (9th Cir. 2001) (citation omitted). It is "relevant evidence that, considering the entire record, a reasonable person might accept as adequate to support a conclusion." Id. (citation omitted). "In determining whether the [ALJ's] findings are supported by substantial evidence, [the Court] must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the [ALJ's] conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (citations omitted). "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Trevizo, 871 F.3d at 674-75 (quoting Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007)). This includes deferring to the ALJ's consistency determinations and resolutions of evidentiary conflicts. See Lewis, 236 F.3d at 509. A court reviews "only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Garrison v. Colvin, 759 F.3d 995, 1010 (9th Cir. 2014) (citation omitted).

Section 405(g) permits a court to enter judgment affirming, modifying, or reversing the Commissioner's decision. 42 U.S.C. § 405(g). The reviewing court may also remand the matter to the Social Security Administration for further proceedings. Id.

## ANALYSIS

Plaintiff challenges the ALJ's rejection of his subjective symptoms testimony as legal error. See Pl.'s Mot.

### I. Subjective Symptoms Testimony

#### a. Relevant Law

The Ninth Circuit has established a two-part test to determine "whether a claimant's testimony regarding subjective pain or symptoms is credible[.]" See Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which

4

could reasonably be expected to produce the pain or other symptoms alleged.'" Id. (quoting Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991)). The claimant "'need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.'" Id. (quoting Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996)).

Second, if the claimant meets this first test and there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so." Id. (internal quotation marks and citations omitted). General findings are insufficient; the ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." See Reddick, 157 F.3d at 722 (internal quotation marks and citations omitted). The ALJ's findings must be "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002).

In weighing a claimant's credibility, an ALJ may consider "[a claimant]'s reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." Orn, 495 F.3d at 636 (internal quotation marks and citations omitted). An ALJ may also consider "testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." Thomas, 278 F.3d at 959 (citations omitted). If the ALJ's finding is supported by substantial evidence, the court "may not engage in second-guessing." Id. (citations omitted).

### b. **Plaintiff's Subjective Symptoms**

#### 1. Plaintiff's Exertion Questionnaire

On or about September 6, 2016, Plaintiff completed an "Exertion Questionnaire" in connection with his applications, in which he described his symptoms and limitations. AR at 270-72.

5

According to Plaintiff, he experienced pain in his "legs, hips, back, neck, shoulders [and] arms." Id. at 270. Plaintiff stated he had trouble "walking, standing, sitting, writing, picking things up[,]" had issues with concentration, trouble sleeping, and experienced symptoms of fatigue and depression. Id.

Plaintiff stated that on a typical day, he would "try to do exercise[,]" walk, clean the house, take his son to school, cook sometimes, take a shower, shave, go to the bathroom, and perform yardwork. Id. He qualified these activities—noting that he experienced pain performing them. Id. For example, Plaintiff noted that he could only perform chores for thirty minutes "depending on stiffness and pain." Id. at 272. He stated that while he could walk (for an unspecified distance), afterwards, his joints became stiff and he experienced "aching pain from feet to neck" and "sharp pain" throughout his body. Id. at 270.

Additionally, Plaintiff stated he could only lift and/or carry very light objects. Id. at 271. Plaintiff stated he slept three to four hours every day and required rest periods lasting twenty to thirty minutes depending on pain throughout the day, and would take naps once or twice a day depending on pain and how much he had been up the night before. Id. at 272.

### 2. Plaintiff's Hearing Testimony

On June 19, 2018, Plaintiff, represented by counsel, appeared at the hearing before the ALJ. Id. at 41-82.

Plaintiff testified that he took Levothyroxine, Cyclobenzaprine, Hydrocodone, and Morphine Sulfate twice a day. Id. at 60-61. Plaintiff testified the side-effects from these medications required him to take two naps a day: the first for around two hours and the second for around a hour. Id. at 69.

Plaintiff testified that he was "most comfortable at home" with his feet up, stating:

> Sitting makes my shoulder go numb, or makes my finger go numb, pain shooting down. And I find myself constantly moving side to side. Standing, I get a lot of pressure at my lower back[.]

Id. at 69-70. Plaintiff testified he stayed in this position for about four to five hours in an

6

eight hour day because of the side-effects from his medication, pain, and depression. Id. at 70.

Plaintiff testified that he could sit comfortably for about twenty to thirty minutes before having to "adjust" himself, and could stand for about twenty minutes before needing to sit down. Id. at 71. Plaintiff further testified that he could walk for about twenty or thirty minutes before needing to rest. Id.

He testified that after walking:

> Normally what I would have to do is I'd have to kind of cram up in a ball and sit there and wait for either the pressure or the pain going down the leg to subside and then I just call it a day. If I'm at – if I try to push it and walk down to maybe the end of the block and I can't make it I call my wife to come pick me up.

Id. at 72.

In regards to other physical limitations, Plaintiff testified that he could grab a gallon of milk, but would not be able to lift it with his left arm, although he could lift a little more with his right arm. Id. Plaintiff further testified he had problems reaching overhead and using his hands and fingers. Id.

As directed to his daily activities, Plaintiff testified that he tried vacuuming, but would stop halfway because of pressure on his lower back. Id. at 73. Plaintiff further testified that he would attempt to help his wife in the kitchen, but would feel pain within ten to fifteen minutes. Id. Plaintiff testified that he could not help with the laundry because he had difficulty walking down stairs. Id.

Plaintiff testified that he bathed lying down because he felt pressure on his lower back when standing and once he felt this pressure it would remain for most of the day. Id. at 63. Plaintiff testified that when grocery shopping "pain starts shooting down" his leg and feet to a point where his legs feel like they are "giving out" and he would have to "will it to force it" to keep moving. Id. at 67-68.

///

7

Finally, Plaintiff testified that he had been diagnosed with depression and some suicidal ideations resulting from pain and his qualify of life. Id. at 74.

### c. The ALJ's Treatment of Plaintiff's Testimony

In his written decision, the ALJ made the following findings:

> In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical or laboratory diagnostic techniques--that could reasonably be expected to produce the claimant's pain or other symptoms.
>
> Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional limitations. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities.
>
> The claimant, age 44, alleges that he cannot work due to back and neck problems (Exhibit 1E/2). He reported pain, which limits his walking, standing, sitting, and picking things up (Exhibit 5E). He reported the ability to perform daily activities including personal grooming tasks, drive his son to school, sweep, and do dishes, despite these activities causing him pain. He testified he has difficulty reaching overhead. He testified he has more pain when walking up a hill. He testified his pain medications take away pain, while he still has pressure. The claimant testified he walks up and down his 100-yard driveway to move around and exercise.
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms;

however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

February 25, 2014 magnetic resonance imaging ("MRI") of the cervical spine demonstrated moderate-sized disc protrusion at C5-C6 with mild central stenosis (Exhibit 1F).

In January 2015, the claimant complained of lower back pain, which went to his feet (Exhibit 3F/8-10). Physical exam of the lumbar spine showed tenderness to palpation and severe pain with limited range of motion. Yet, he had a normal gait and normal muscle tone and strength in the lower extremities. He was prescribed pain medication.

February 3, 2015 MRI of the lumbar spine demonstrated disc bulges, bilateral arthropathy at L4-L5 and L5-S1, with mild bilateral neural foraminal narrowing and no compression (Exhibit 2F).

In March 2015, the claimant's back pain was noted stable and relieved by over the counter medication (Exhibit 3F/14, 16). The doctor stated the claimant had been referred to physical therapy and pain management in the past, but was unable to go due to having no insurance.

In October 2015, he stated that one month prior, he had been moving furniture during a move and hurt his neck, lower back, and knee (Exhibit 4F/l l-13). Physical exam showed back, neck, and knee pain, with decreased range of motion in the back. Yet, he had a normal gait and station.

In January 2016, the claimant stated he did not undergo epidural injection for his back due to insurance issues (Exhibit 4F/4-6). Physical exam showed neck and back pain and a left limp. Yet, he had run out of pain medications for a month and a half.

In April 2016, the claimant sought emergency room treatment for back pain, which went to his thighs (Exhibit 6F). Physical exam showed tenderness to palpation in the back, yet he had a normal

range of motion with negative straight leg raise bilaterally. He had a normal gait, with 5/5 strength despite pain.

On July 28, 2016, the claimant underwent an orthopedic evaluation with Herman Schoene, M.D., for disability determination purposes (Exhibit 7F). He stated pain in his neck, back, upper and lower extremities, yet he was not taking any medications at the time. Upon physical exam, the claimant sit and stood with a normal posture. He had a normal gait and was able to get on and off the examining table without difficulty. He had full range of motion in his neck. There was no pain in his back, with some limited range of motion. Range of motion in his upper and lower extremities was within normal limits, other than a limited flexion of the shoulders.

January 2017 physical exam showed despite neck, back, knee pain and a left limp, he had full 5/5 strength in the upper and lower extremities (Exhibit 10F/6). In January 2018, the claimant requested pain medication refills (Exhibit 10F/7-10). Physical exam showed tenderness and decreased range of motion in the cervical and lumbar back.

The claimant reported he is 5 feet, 11 inches tall and weighs 230 pounds (Exhibit 1E/2). The claimant's body mass index ("BMI") was 32.1, which is considered obesity. Records dating back to May 2015 indicate the claimant was obese (Exhibit 4F/25). In January 2018, he had a BMI of 34.3 (Exhibit 10F/8). The undersigned has considered this condition and finds no further restrictions than the above limitations.

As for the claimant's statements about the intensity, persistence, and limiting effects of his symptoms, they are inconsistent because the objective medical evidence generally does not support the alleged loss of function. While the record indicates positive findings on radiographic scans and physical exams, which supports some limitations, the claimant also had a normal gait and motor strength of 5/5 (Exhibits 1F, 2F, 3F/9, 4F/11, 18, 23, 6F). The record also includes references to recommendations and treatment of physical therapy, epidural injection for the back, and orthopedic surgery evaluation (Exhibit 4F/8, 15, 10F/7). While the claimant testified to difficulty with overhead reaching,

the record does not support manipulative limitations where physical exams showed the claimant's upper extremities were within normal limits (Exhibits 7F, 10F/6).

As for the opinion evidence, the undersigned has given great weight to the opinion testimony of the impartial medical expert, Ronald Kendrick, M.D. (Exhibit 11F). He assessed the claimant with the above residual functional capacity. Dr. Kendrick is board certified in orthopedic surgery, he has an awareness of all the evidence in the record, and he has an understanding of social security disability programs and evidentiary requirements. Most importantly, his opinion regarding the claimant's functional limitations is highly persuasive because it is well supported by the objective medical evidence already discussed in this decision.

The DDS state agency medical consultants, at both levels assessed a light exertional level, with limits to stand/walk for 2 hours, and sit for 6 hours in an 8-hour workday; never climb ladders, ropes, and scaffolds, and occasional remaining postural activities (Exhibits 1A/2A, 5A/6A). The undersigned gives partial weight to this assessment, where it is generally consistent with the record, yet the undersigned gives more weight to Dr. Kendrick's opinion, where he had the opportunity to review the entire medical record, including the claimant's testimony.

Herman Schoene, M.D., orthopedic consultative examiner, assessed a medium exertional level, with limits to stand/walk, and sit for 6 hours out of an 8-hour workday (Exhibit 7F). The undersigned gives little weight to this opinion, as it is generally inconsistent with the remainder of the record and Dr. Kendrick's opinion, which indicate further restrictions. Dr. Schoene did not have the opportunity to review the entire record, including the hearing testimony.

Meredith Chin, FNP-C, nurse practitioner, assessed the claimant limited to stand/walk, and sit for 3 hours out of an 8-hour workday, with manipulative limits, and would be absent more than four times per month (Exhibit 5F). This health provider is not an acceptable medical source under the Social Security Act (20 CFR 404.1513 and 416.913). Nevertheless, the undersigned has considered this statement in determining the severity of the

claimant's impairments and their effect on the claimant's ability to function. There are no accompanying treatment records from nurse Chin and as discussed, the record does not indicate any manipulative limitations. Further, Dr. Kendrick testified that the claimant would miss four times of work per month was not supported by the record.

The claimant was assessed with temporary disability from May 2015 through February 2016 (Exhibit 4F/4-5). The undersigned gives little weight to this opinion because it was intended to reflect temporary limitations for short term disability and because it does not adequately address the nature and extent of the claimant's physical conditions, which have been confirmed by objective evidence and shown to impose the above limitations.

In sum, the above residual functional capacity assessment is supported by the opinion of Dr. Kendrick and the medical evidence. The above residual functional capacity involves a framework of light exertional work activity that is eroded by virtue of the limitation of standing and walking to 4 hours out of 8-hour workday, lifting and carrying up to 15 pounds, which is more than the framework of a sedentary exertional level. Specifically, the above limitations address the claimant's limitations resulting from his degenerative disc disease of the cervical and lumbosacral spine; and obesity.

AR at 19-21.

### d. The ALJ Failed To Articulate A Clear And Convincing Reason For Rejecting Plaintiff's Testimony

The Parties do not challenge the ALJ's step one determination. Neither Party alleges that the ALJ found Plaintiff was malingering. See Pl.'s Mot; Def.'s Mot. As a result, the Court must consider the second part of the Ninth Circuit's two-part test: whether the ALJ gave clear and convincing reasons for discounting Plaintiff's subjective claims regarding his symptoms.

///

12

19cv1318-LL

Here, the Court finds that the ALJ failed to specifically identify (apart from a single instance) which of Plaintiff's statements the ALJ determined were not credible. This error prevents the Court from conducting a meaningful judicial review. See Reddick, 157 F.3d at 722 ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."); Smolen, 80 F.3d at 1284 ([a]n ALJ "must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion.").

Instead, in this case, the ALJ merely summarized portions of Plaintiff's disability report, exertion questionnaire, and hearing testimony and then vaguely referenced the entirety of this testimony as statements regarding the "intensity, persistence, and limiting effects" of Plaintiff's symptoms. AR at 19-20.

The ALJ's use of this boilerplate language—without identifying which of Plaintiff's statements the ALJ found were not credible and why—is insufficient for this Court to determine whether the ALJ's decision was supported by substantial evidence. Brown-Hunter v. Colvin, 806 F.3d 487, 491, 493 (9th Cir. 2015) (ALJ erred in making a conclusory statement that claimant's "statements concerning the intensity, persistence and limiting effect of [her] symptoms are not credible to the extent they are inconsistent with the [ALJ's] residual functional capacity assessment" without identifying which of claimant's statements the ALJ found were not credible and why); Treichler v. Comm'r of SSA, 775 F.3d 1090, 1103 (9th Cir. 2014) (ALJ erred in making conclusory statement that "the claimant's statements concerning the intensity, persistence and limiting effects" of the claimant's symptoms were inconsistent with the ALJ's residual functional capacity assessment without identifying what parts of the claimant's testimony were credible and why); see also Isis A. v. Saul, No. 18cv01728-W-MSB, 2019 U.S. Dist. LEXIS 130801, at *11-12 (S.D. Cal. Aug. 2, 2019) ("The ALJ's generic references to Plaintiff's statements as 'complaints of disabling symptoms and limitations,' . . . did not specifically identify the statements that the ALJ was discrediting.") (adopted by Avina v. Saul, No. 18-CV-1728-W-MSB, 2019 U.S. Dist. LEXIS 140324 (S.D. Cal. Aug. 19, 2019)); Eldridge v. Berryhill,

No. 17cv497-JLS-BLM, 2018 U.S. Dist. LEXIS 87985, at *22-23 (S.D. Cal. May 23, 2018) ("The ALJ's vague references to Plaintiff's statements as 'allegations of disabling limitations' are not specific identifications of which statements are being discredited.") (adopted by Eldridge v. Berryhill, No. 17-CV-497-JLS-BLM, 2018 U.S. Dist. LEXIS 113699 (S.D. Cal. July 9, 2018)).

As set forth above, Plaintiff testified to several different physical impairments. Even were the Court to read the ALJ's opinion in this case generously however, the only time the ALJ specifically referenced Plaintiff's testimony is a brief mention of Plaintiff's subjective difficulties reaching overhead. See AR at 20-21. Aside from this single point of discussion, the ALJ's decision completely fails to connect any other portion of Plaintiff's testimony to the medical evidence that the ALJ found undermines it.

Instead, the ALJ appears to have simply set forth his non-credibility conclusion followed with a summary of the medical evidence supporting his RFC determination. As the Ninth Circuit has stated however:

> [P]roviding a summary of medical evidence in support of a residual functional capacity finding is not the same as providing clear and convincing **reasons** for finding the claimant's symptom testimony not credible.

Brown-Hunter, 806 F.3d at 494 (emphasis in original); see also Treichler, 775 F.3d at 1103 (mere fact that ALJ "set out his RFC" and "summarized the evidence supporting his determination" is insufficient—a court "cannot substitute" it's conclusions "for the ALJ's, or speculate as to the grounds for the ALJ's conclusions."). This error prevents the Court from being able to meaningfully determine whether the ALJ's conclusions was supported by substantial evidence. Brown-Hunter, 806 F.3d at 494-95.

The Court also does not find Defendant's arguments for affirming the ALJ's decision persuasive. Defendant argues first that the ALJ properly rejected Plaintiff's subjective symptoms testimony because the ALJ found that "the weight of the medical evidence and the medical-opinion evidence did not corroborate" Plaintiff's testimony regarding his

functional limitations. Def.'s Mot. at 4. Specifically, Defendant argues the ALJ properly discounted Plaintiff's claims because they were "inconsistent" with the medical evidence. Id. at 7.

However, the ALJ's rejection of Plaintiff's testimony for being "inconsistent" with the "objective medical evidence" cannot—by itself—be legally sufficient to support the ALJ's adverse credibility determination. See Trevizo, 871 F.3d at 679 ("[A]n ALJ may not disregard a claimant's testimony solely because it is not substantiated affirmatively by objective medical evidence[.]") (internal quotation marks and citation omitted); Light v. SSA, 119 F.3d 789, 792 (9th Cir. 1997) ("[A] finding that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the severity of his pain.").

Defendant contends Plaintiff "overlooks that the ALJ did not just rely on the medical evidence," but permissibly discounted Plaintiff's subjective symptoms testimony based on the opinion of impartial medical expert, Dr. Ronald Kendrick. Def.'s Mot. at 7. As such, Defendant argues the "ALJ was well-within the bounds of reason to rely on Dr. Kendrick's sound and supported expert medical opinion[.]" Id.

However, the ALJ did not specifically delineate Dr. Kendrick's opinion as a reason for discounting Plaintiff's subjective symptoms. Indeed, Plaintiff's subjective symptoms testimony is not referenced anywhere in the ALJ's discussion of Dr. Kendrick's opinion— beyond a conclusion that Dr. Kendrick had "the opportunity to review the entire medical record, including the claimant's testimony." AR at 21-22. The Court is "constrained to review the reasons the ALJ asserts." Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir.2003). For these reasons, this basis which Defendant now invokes for rejecting Plaintiff's subjective symptoms testimony cannot be the one upon which the Court affirms the ALJ's decision. See Burrell v. Colvin, 775 F.3d 1133, 1139 (9th Cir. 2014) (declining to infer ALJ rejected a claimant's testimony based on medical findings, as the ALJ "never stated that he rested his adverse credibility determinations on those findings.").

///

///

15

19cv1318-LL

## II. **Remedy**

The only remaining question for the Court is whether to remand for further administrative proceedings or for the payment of benefits.

"The decision of whether to remand a case for additional evidence, or simply to award benefits, is within the discretion of the court." Trevizo, 871 F.3d at 682 (quoting Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987)). "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004).

The Ninth Circuit applies "a three-part credit-as-true standard, each part of which must be satisfied in order for a court to remand to an ALJ with instructions to calculate and award benefits[.]" Garrison, 759 F.3d at 1020. The standard is met where: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." Id. (footnote and citations omitted).

Even if all three requirements are met, the Court retains flexibility to remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Brown-Hunter, 806 F.3d at 495.

Here, based on the record before it, the Court cannot conclude the ALJ would have been required to find Plaintiff disabled if the ALJ had properly considered all of Plaintiff's subjective claims. "The rare circumstances that result in a direct award of benefits are not present in this case." Leon v. Berryhill, 874 F.3d 1130 (9th Cir. 2017). Instead, the Court finds further administrative proceeds would serve a meaningful purpose so that all of Plaintiff's testimony may be properly evaluated.

///

///

## CONCLUSION

For the reasons set forth above, the Court **GRANTS** Plaintiff's Motion for Summary Judgment and **DENIES** Defendant's Cross-Motion for Summary Judgment. This case is **REMANDED** for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

Dated: April 6, 2020

Honorable Linda Lopez
United States Magistrate Judge